UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Maura Howard, | Case No. 21-cv-0574 (WMW/BRT) |
| Plaintiff, | |
| v. | **ORDER** |
| Life Time Fitness, Inc.; LTF Club Operations Company, Inc.; LTF Club Management Company, LLC; and LTF Yoga Company, LLC, | |
| Defendants. | |

---

In this dispute arising out of an unjust-enrichment claim, Defendants Life Time Fitness, Inc; LTF Club Operations Company, Inc.; LTF Club Management Company, LLC; and LTF Yoga Company, LLC (collectively, Life Time), move to dismiss and compel arbitration. (Dkt. 31.) For the reasons addressed below, Life Time's motion is granted.

## BACKGROUND

This action arises out of a dispute concerning unpaid wages. Plaintiff Maura Howard is a Minnesota resident who works as a group fitness instructor at Life Time's Bloomington (North) Minnesota location. Defendant Life Time Fitness, Inc., is a Minnesota corporation, of which the remaining Defendants are subsidiaries registered in Minnesota, Arizona, and Illinois.

Life Time requires that fitness instructors spend fifteen minutes before and after each class in the studio. Life Time pays instructors only for scheduled class time and

does not pay them for time spent in the studio before and after class. In June 2019, Life Time circulated an arbitration agreement, Team Member Care, to its employees.

On August 17, 2020, Howard and another fitness instructor, Alicia Shaeffer, commenced this action against Life Time in Minnesota state court, alleging a single claim of unjust enrichment on behalf of a putative class comprised of group fitness instructors employed by Life Time. Life Time filed a motion to dismiss or, in the alternative, to compel arbitration. The Hennepin County District Court, Fourth Judicial District, denied Life Time's motion because Howard denied receiving notice of the purported arbitration agreement.

On February 11, 2021, Howard filed an amended class-action complaint. Having removed the amended class-action complaint to this Court, Life Time now renews its motion to compel arbitration and to dismiss this action.

## ANALYSIS

### I. Motion to Compel Arbitration

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, requires the enforcement of written agreements to arbitrate disputes and reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[C]ontract provisions directing arbitration shall be enforceable in all but limited circumstances." *Kelly v. Golden*, 352 F.3d 344, 349 (8th Cir. 2003). A motion to compel arbitration must be granted if there is a valid arbitration agreement between the parties and the dispute falls within the scope of the arbitration agreement. *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008) (citing

9 U.S.C. § 4). Although state contract law governs whether an enforceable agreement exists, federal law governs whether the dispute is within the scope of the parties' arbitration agreement. *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009). A motion to compel arbitration is analyzed either as a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., or as a motion for summary judgment under Rule 56, Fed. R. Civ. P., depending on whether "matters outside the pleadings" have been presented and considered. *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881–82 (8th Cir. 2017); *accord Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018). Here, because the parties present materials outside the pleadings, the Court analyzes the motion to compel arbitration as a motion for summary judgment under Rule 56, Fed. R. Civ. P.

      A.     **Existence of an Arbitration Agreement**

Howard argues that she and Life Time did not enter into a valid arbitration agreement because there was no meeting of the minds. Howard contends that she did not receive or read the arbitration agreement, that the arbitration agreement is indefinite, and that Life Time should be equitably estopped from enforcing the arbitration agreement.

State contract law governs whether the parties have entered into a valid agreement to arbitrate a particular matter. *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999). Under Minnesota law, contract formation requires the communication of a specific and definite offer, acceptance of that offer, and consideration. *See Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626–27 (Minn. 1983). When determining whether the parties have entered into a valid and enforceable contract, courts evaluate the objective conduct of the parties. *Cederstrand v. Lutheran Brotherhood*, 117 N.W.2d 213,

221 (Minn. 1962).  An employee accepts a modification to a unilateral employment contract by retaining employment with knowledge of the new conditions of employment. *Pine River State Bank*, 333 N.W.2d at 627.  An employee's failure to opt out of an amendment to a unilateral contract constitutes affirmative acceptance of the amendment. *Cicle v. Chase Bank USA*, 583 F.3d 549, 555 (8th Cir. 2009).  Absent fraud, mistake, or unconscionable terms, a party to a contract on which others have relied cannot avoid contractual duties by failing to read the contract or to know its contents.  *Greer v. Kooiker*, 253 N.W.2d 133, 140 (Minn. 1977).

### 1. Receipt and Knowledge of the Arbitration Agreement

The parties dispute whether Howard received a copy of the arbitration agreement and, therefore, whether she had knowledge of the terms of the agreement.  Minnesota state law presumes, in the absence of proof to the contrary, that "mail properly addressed and sent with postage prepaid is duly received by the addressee."  *Nafstad v. Merchant*, 228 N.W.2d 548, 550 (Minn. 1975).  Life Time has provided evidence that it mailed Howard a copy of the arbitration agreement.  At her deposition, Howard testified that she considers mail from Life Time to be "junk mail" and throws away mail from Life Time without reading it.  It was "possible," Howard testified, that she received the arbitration agreement and threw it away without reading it.  Life Time also provided the agreement to Howard through multiple electronic platforms.  Because Howard neither denies receiving the arbitration agreement by mail nor offers any evidence that she did not receive it, Minnesota law's presumption of receipt applies.  Accordingly, Howard is presumed to have received a copy of the arbitration agreement.

4

Howard does not contend that she did not accept the arbitration agreement. And because she received the arbitration agreement and continued her employment, she accepted the arbitration agreement under Minnesota law. *See Pine River State Bank*, 333 N.W.2d at 627 (holding that an employee accepts a unilateral contract by remaining employed). Failing to read a contract is not a defense to contract formation absent fraud, mistake, or unconscionable terms. *Greer*, 253 N.W.2d at 140. Howard's sole available defense to the existence of a valid contract is that the arbitration agreement is unenforceable because it is indefinite.

### 2. Indefiniteness

Howard maintains that the arbitration agreement is unenforceable because it is indefinite. "If an offer is so indefinite as to make it impossible for a court to decide just what it means and to fix exactly the legal liabilities of the parties, its acceptance cannot result in an enforceable contract." *Young v. St. Paul Publishers*, 298 N.W. 251, 252 (Minn. 1941). "In interpreting a contract, the language is to be given its plain and ordinary meaning." *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). Contract terms are read in the context of the entire contract and in doing so, a court should not "construe the terms so as to lead to a harsh and absurd result." *Id.*

Howard argues that the arbitration agreement is confusing because it refers to the arbitration agreement as an "agreement" in some clauses, but as a "provision" in the opt-out clause. Because there is no "arbitration provision" in the arbitration agreement, Howard argues, she could not have understood what part of the agreement she was

5

permitted to reject. This argument is neither persuasive nor availing. On the first page of the agreement, there is an underlined heading titled "Mutual Agreement to Arbitrate; Claims Covered by the Agreement." The most natural reading of the agreement is that the "Mutual Agreement to Arbitrate" subsection is the "arbitration provision" referenced in the opt-out clause. The use of the term "provision" instead of "agreement" is not so indefinite as to make it impossible for a court to decide what the agreement means. *Young*, 298 N.W. at 252.

Howard also argues that a sentence in the first paragraph of the agreement is unclear. The sentence provides, "Life Time requires its team members (except as noted below) to agree to the terms of this Mutual Arbitration Agreement ("Agreement") as a condition of Life Time's consent to be bound by its terms." Howard argues that a requirement that employees agree to the arbitration agreement is inconsistent with the opt-out clause of the arbitration agreement, which provides that consenting to arbitration is not a condition of employment. And, Howard argues, it is unclear as to what "except as noted below" refers. But as Life Time observes, the sentence in question addresses consideration and requires employees to be bound by the terms of the arbitration agreement in exchange for Life Time's promise also to be bound by the terms. The provision does not require employees to accept the arbitration agreement. The most natural reading of the arbitration agreement is that the exceptions are contained in the section entitled "Claims Not Covered by this Agreement." The sentence in the first paragraph does not render the arbitration agreement indefinite.

Howard also argues that the arbitration agreement's reference to the "benefits of arbitration" prevents employees from understanding the consequences of opting out of the arbitration agreement. The opt-out clause provides:

> Option to Opt-Out of Arbitration. Arbitration is not a mandatory condition of employment at Life Time, except for team members working at Life Time clubs in Missouri. Except for team members in Missouri, any Life Time team member may elect not to receive the benefits of arbitration by notifying Life Time in writing of the team member's desire to opt out of this arbitration provision by sending a letter, by certified mail, to the following address, within 15 days after the team member receives this Agreement, stating the team member's name and intent to opt out of this arbitration provision . . . .

Howard argues that this language is confusing because it suggests that employees are only permitted to opt out of the benefits of arbitration, and not its disadvantages. This argument is unavailing. Later in the same sentence, the agreement refers to opting out of the "arbitration provision" as a whole. The most natural reading of the clause as a whole is that an employee can opt out of arbitration entirely. Moreover, Howard does not allege that any ambiguity in the opt-out provision prevented her from opting out of arbitration. Accordingly, the opt-out provision does not render the arbitration agreement unenforceable as indefinite.[1]

---

[1] Howard also argues that the arbitration agreement is invalid as indefinite because the entire agreement is incomprehensible. Howard relies on scores from readability tests for this argument. But Howard does not cite any legal authority to support why such measures are relevant to the analysis of the arbitration agreement. Moreover, as described herein, the specific portions of the arbitration agreement to which Howard objects are not so confusing or ambiguous as to render the agreement indefinite or unconscionable.

7

### 3. Equitable Estoppel

Howard next argues that the Court should equitably estop Life Time from enforcing the arbitration agreement. A plaintiff must establish three elements to establish equitable estoppel: (1) that the defendant made promises or inducements to the plaintiff, (2) that the plaintiff reasonably relied on the promises or inducements, and (3) that the plaintiff will be harmed if the defendant is not estopped. *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990).

Howard argues that Life Time previously required employees to acknowledge receipt of other types of employee policies, but Life Time did not require employees to acknowledge the arbitration agreement. Howard contends that she reasonably relied on Life Time to request acknowledgement for important policies. Life Time argues that it did not have a duty to request acknowledgement and that Howard cannot establish reliance.[2] In support of this argument, Life Time provides a list of the documents it provided Howard, with a record of whether Howard acknowledged or signed each document. Of the 26 documents that required signature, Howard signed only 12. That Howard failed to acknowledge or sign even those documents with a signature requirement belies her argument that she reasonably relied on Life Time's signature

---

[2] Life Time initially argues that Howard's estoppel claim should be heard by the arbitrator because the distribution of the arbitration agreement implicates the entire agreement and not merely the arbitration provision. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("[R]egardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."). But because the contract at issue here is a standalone arbitration agreement, the distinction between the arbitration clause and the contract as a whole is meaningless. Accordingly, the Court addresses the estoppel claim on the merits.

8

requests to ascertain the importance of the documents Life Time provided her. Accordingly, Howard's equitable-estoppel argument is unavailing.

For these reasons, the Court concludes that the arbitration agreement is a valid contract.

### B. Scope of the Arbitration Agreement

Arbitration provisions are broadly enforced unless the arbitration clause is not susceptible to an interpretation that covers the dispute. *3M Co.*, 542 F.3d at 1199; *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25 (explaining that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Arbitration is mandatory when "the underlying factual allegations simply touch matters covered by the arbitration provision." *Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017) (internal quotation marks omitted). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Howard's amended complaint alleges that Life Time was unjustly enriched because it required its employees to perform uncompensated work. Covered claims under the arbitration agreement include "those concerning . . . compensation." On its face, therefore, the arbitration agreement encompasses the dispute between Howard and Life Time.

Howard argues that the "incomprehensible language" of the arbitration agreement and the method by which Life Time chose to distribute the arbitration agreement place Howard's dispute with Life Time outside the scope of the arbitration agreement. But

9

these arguments pertain to the validity of the arbitration agreement, not whether the arbitration agreement encompasses the dispute between Howard and Life Time. For these reasons, Howard has not met her burden of proving that her unjust-enrichment claim against Life Time falls outside the scope of the arbitration agreement. The Court concludes that the scope of the arbitration agreement encompasses the dispute between Howard and Life Time.

For these reasons, Life Time's motion to compel arbitration is granted.

## II.     Motion to Dismiss

Life Time also moves to dismiss this case. A district court "shall . . . stay" an action until arbitration is completed in accordance with the terms of the arbitration agreement. 9 U.S.C. § 3. But when a federal court grants a motion to compel arbitration, it is within that court's discretion to dismiss instead of staying the case pending arbitration when it is clear that the entire controversy between the parties will be resolved by arbitration. *See Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 821 (8th Cir. 2015) (citing *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769–70 (8th Cir. 2011)). The Court, in its discretion, dismisses this case without prejudice.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED:**

1.     Defendants' motion to dismiss and compel arbitration, (Dkt. 31), is **GRANTED**.

2.     This action is **DISMISSED WITHOUT PREJUDICE**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  June 30, 2022                                           s/Wilhelmina M. Wright
                                                                Wilhelmina M. Wright
                                                                United States District Judge